Nash, C. J.
 

 Yery clearly the plaintiff is entitled to the relief which she seeks. Jason Meador, jr., died in the year 18 , intestate, leaving StephenL. Meador, Samuel Odom, Mary E. Stewart, the plaintiff, and Huida, the wife of the defendant, his heirs-at-law. At the time of his death he was seized and possessed of a tract of land which the defendant took possession of, claiming itas the property of Jason Meador, sr., dec’d., the father of Jason Meador, jr. A petition was filed in the proper court by Stephen L. Meador, Sami. Odom, and the plaintiff, against the defendant and his wife Huida, for the partition of the said land. At Sept. Term, 1852, a decree was made by the Court that the land was the property of the said Jason Mead- or, junior, and that the said parties were his heirs-at-law, and the land was ordered to be sold, and an account taken of the rents and profits while in the possession of the defendant, and the proceeds divided among the heirs. The land was sold, and brought the sum of $4,550, and the rents and profits reported against the defendant were $218,94. This amount was paid into the offico of the clerk and master, and the share of the plaintiff, which is about $1200, is still in the office. The plaintiff resided in South Carolina. At Fall Term,-, of the Court of Equity of Anson county, the defendant filed in his name, and that of the plaintiff, a petition to have paid to him as assignee of the plaintiff, her share of the money then in the office. Of this petition the plaintiff had no notice. The bill was filed to enjoin the defendant from receiving the money in the clerk’s office.
 

 To this statement the defendant answered, that he purchased from the plaintiff her interest in the land, before the sale, and before the decree therefor, at the price of $60, of which he paid her $30 in cash, and gave his note for the remainder, and he produced her deed, dated 4th of March, 1852. The plaintiff, in her bill, admits she executed that deed, but charges it was obtained through the fraudulent representations of the
 
 *188
 
 defendant. She alleges that sometime before the decree of sale was obtained, the defendant came to her residence in South Carolina, and falsely and fraudulently told her that the suit for the partition of the land had been decided, and that the Court had decided the land to belong to Jason Meador, sr., the grandfather of the plaintiff, and that she was entitled to one fourth of one sixth of the land, and that when she executed the conveyance she thought and believed she was conveying away her interest in the land as one of the heirs of her grandfather. To this allegation the defendant opposes a total denial, lie denies he made any such statement as that set out in the bill, and that the plaintiff well knew, when she executed the deed, she was conveying her interest in the property of her father, and that she so executed it because she preferred the present possession of the sum he offered, to her share in the land. That Jesse J. Nash, who lived in Alabama, went with him to the residence of the plaintiff when the conveyance was made. Subsequently, he went to the plaintiff’s and took with him one Michael O. Nash and the deed, and requested the plaintiff to acknowledge the deed before the said M. C. Nash, to enable him to have it proved in this State, which she at first refused to do, saying that she had found out that the land was worth much more than she expected. This was before the sale. Tier mother was present, and told the plaintiff she ought not to deny her hand-writing, for she knew she had signed the deed. She then acknowledged it before Michael 0, Nash, who attested it, and lie offered to pay her the $30 due upon his note, which she refused to take.
 

 The defendant further stated in his answer, that, at the time the petition for partition was filed, the land was worth no more than $2000, and that it was run up to the price at which it was sold, from a spirit of rivalry .among the bidders.
 

 It would be difficult to deny to the plaintiff the relief she asks if the case were tried on the bill and answer; but when the testimony is examined, it discloses as base a fraud as can be well conceived. The defendant places his defence upon ihe deed of the 4th of March, and .denies positively the charg~
 
 *189
 
 es of fraud in its- procurement.. He denies that he told the plaintiff .that the'suit for partition had been decided against her,, and that the Court had decreed that the land belonged to Jason 'Meador, sen’r., her grand-father. lie denies that he told her that she was in consequence entitled to but one-fourth ©f one-sixth of the land- Three witnesses contradict him directly, Gat
 
 sey
 
 Hodge,
 
 Lydia Meador
 
 and
 
 Mr. Campbell.
 

 The first swears that she was present at the trade, and heard Hubbard tell the- plaintiff her suit was thrown out; and heard Jesse Nash, who was present, tell her that the law-suit was decided in favor of Jason Meador, sen’r., and that she was-entitled to- one-fourth- of one-sixth of the land, and that the plaintiff bargained to sell the defendant her interest in the land as belonging, to her grand-father.
 

 Mrs. Meador
 
 the same.
 

 Mr. Gampbell
 
 says the defendant told him that the suit for the partition had been decided in favor of Jason Meador, sr.,. and each of the heirs was entitled to one fourth of one sixth, and he heard the defendant make to the plaintiff the same statement.. The defendant’s witness,
 
 Jesse J. Hash,
 
 in his statement, says the plaintiff sold her interest in the land, which was stated to be one fourth; and that lie-believes she so understood it. lie does not say any thing about the statement as testified to by the plaintiff’s witness, but he does state that Hubbard told the plaintiff that the land' was believed to be worth $2000:
 
 Michael O. Hash’s
 
 statement is, that he went with Hubbard to the residence of plaintiff to witness her ’acknowledgment of the deed, in order to its probate and registration in Anson County. Now it is impossible for any one to read this statement without ata once coming to the conclusion that the conveyance from the plaintiff’ to the defendant was obtained by fraud. The defendant was the brother-in-law of the plaintiff, and lived in this State where the causé was pending, he being a party interested in it; it was natural, therefore, that she should have confidence in him, and had a right to expect of him a true and honest statement of the progress of that suit. His representation to her was..
 
 *190
 
 false throughout. The suit was still undecided; no decree had Jbeen made; and no declaration by the court that the land belonged to the,estate of Jason Meador, sr.; and all this he knew. He knew that as one of the heirs of her father, Jason Meador, jr., whose right to the land was subsequently declared by the Court, she was entitled to one fourth, and not to one fourth of one sixth.
 

 In argument it was insisted that whatever might have been the mistake of the plaintiff, when the deed was executed, she was acquainted with the facts when she acknowledged the deed before Michael C. Nash, and by such acknowledgment she confirmed it. It is evident that such was not her intention. She did not mean a confirmation. "When she was requested to acknowledge the deed she refused. "When her mother remarked, “you can’t deny that - you signed the deed,” she acknowledged it,, but observed, as is testified by M. C. Nash, “if I had known as much as I do now, I never would have signed it.” And in his answer, the defendant states, after she had acknowledged it, he offered to pay the residue of the money, to wit, $30, for which she had his note, but she refused to accept it. Why did she so refuse if she intended to confirm the conveyance ? Her land was gone; why, then, not take what would have been, and what -was in that case, hers ? She was old and poor. No, by acknowledging the deed she meant simply, in the language of her mother, that she could not deny her signature, and that was all she did acknowledge.
 

 There is another feature in this case which merits attention. The land was sold under a decree of the Court of Equity, on a credit of twelve months, and brought $4550 ; of this sum the plaintiff was entitled to $1,137,50, and if to that be added the fourth of the rents decreed against the defendant, she was entitled to $1,192,24. She was old and in destitute circumstances, and the defendant would have us believe that she was willing to sell that interest for $60. It is true that inadequacy of price is not
 
 per se
 
 fraudulent; but it is often strong and pregnant evidence of the existence of fraud in a transaction.
 

 I have said that, if the case rested upon the bill and answer,
 
 *191
 
 St would be difficult to refuse the plaintiff the relief she asks* It is a well-settled principle of equity that, though there is no fraud or illegality in a transaction, yet if it be carried on in ignorance, or mistake of facts material to its 'operation, a court of Equity will rescind any contract so entered into. Adam’s Eq. 188. Aside, then, from the positive, proof of fraud and imposition, it is impossible to believe that the plaintiff knew of the true situation of the case depending for the partition of the land. As the case resulted, the land was actually worth $4550, and her share near $1200. The plaintiff is entitled to be relieved.
 

 It must be declared that the deed of 4th of March, 1852, was obtained by fraud, and is void and of no effect, and must be surrendered to the plaintiff; 'that she is entitled to receive from the clerk and master of Anson Court of Equity, the sum now in his hands, being one fourth of the proceeds of the sale of the lands of her father, Jason Meador, jr., and also her share of the rents and profits decreed against the defendant, deducting the sum of $30, the amount paid her by defendant. She, the plaintiff, delivering to defendant the note for $30, which she holds.
 

 Pee CueiaM, Decree accordingly*